IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARIO PEREA, on behalf of plaintiff and a class, | ) ) | Case No.: 1:18 cv 7364 |
| | ) | |
| Plaintiff, | ) | Judge: Hon. Edmond E. Chang |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CODILIS & ASSOCIATES, P.C.; | ) | |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CODILIS & ASSOCIATES, P.C.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

Defendant Codilis & Associates, P.C., by its attorneys David M. Schultz and Louis J. Manetti Jr., in support of its Motion to Dismiss, states as follows:

**PRELIMINARY STATEMENT**

Mortgage loan borrowers have the right to reinstate a loan after it has been accelerated due to a default; that is, after the total amount under the mortgage instrument has been declared due, borrowers still have the ability to reinstate the loan by paying the amount required to bring their mortgage loan current, which includes payment of all late charges. This is contractually reflected in the vast majority of mortgages (and is a term in the mortgage here) and it is a statutory right granted by the Illinois Mortgage Foreclosure Law.

Plaintiff Mario Perea's complaint in this case is based on a single fact—that prior to filing a mortgage foreclosure lawsuit, Codilis & Associates, P.C. sent him a letter pursuant to the Fair Debt Collection Practices Act and the Seventh Circuit's safe harbor language in *Miller v.*

*McCalla,* stating the amount due and that because of, among other things, late charges, the amount due on the day Perea paid may be greater.

Perea claims that this sentence violated the FDCPA because lenders "cannot legally impose" late charges after a loan is accelerated, and so the letter falsely claimed that, because of late charges, the amount due could increase.

Perea's Complaint fails to state a plausible claim. First, the language at issue in this case is safe harbor language that the Seventh Circuit crafted in *Miller v. McCalla*, and both that case and this one dealt with pre-foreclosure letters sent pursuant to the FDCPA, after acceleration. Perea's legal theory rests on the implausible claim that the language that the Seventh Circuit offered in *Miller* would have itself violated the FDCPA in that case. Second, the reinstatement rights present in this case allow for the lender to impose late charges post-acceleration—and recent case law holds that similar language about "late charges" does not violate the FDCPA. Finally, the cases that Perea relies on in the complaint are distinguishable and do not support the conclusion that referencing late charges was impermissible. Thus, the complaint should be dismissed, with prejudice.

**FACTS**

Around November 6, 2017, Plaintiff Mario Perea's mortgage loan had fallen into default, and defendant Codilis & Associates, a law firm, received a referral to initiate foreclosure proceedings. On November 6, 2017, Codilis & Associates sent a notice pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g. The letter identified the amount of the debt and informed Perea that "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." (Dkt. No. 1-1 at 49.)

On November 14, 2017, Codilis & Associates filed a mortgage foreclosure lawsuit on behalf of the bank. (Dkt. No. 1-1 at 2-6.)

302975180v1 1015009

In connection with his loan, Perea had signed a mortgage that governed, among other things, his ability to reinstate the loan after a default and acceleration. The mortgage stated that Perea could reinstate if he paid "Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred;" cured any other default; and paid all expenses incurred in enforcing the mortgage. (Dkt. No 1-1 at 18.) Also, during all relevant times the section of the Illinois Mortgage Foreclosure Law about reinstatement was in effect. *See* 735 ILCS 5/15-1602. The statute specifies that in any mortgage foreclosure action, the borrower has the right to reinstate the mortgage "by curing all defaults then existing, other than payment of such portion of the principal which would not have been due had no acceleration occurred, and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults[.]" *Id.*

On November 5, 2018, Perea filed this lawsuit. (Dkt. No. 1.) Perea claims that the letter violated the FDCPA because it referenced "late charges." (*Id.* ¶ 33.) According to Perea, there cannot be any late charges after a loan is accelerated, and referencing late charges in the letter was misleading, and sought to collect an amount not authorized by agreement or by statute. (*Id.*)

## ARGUMENT

Perea's complaint fails to state a plausible claim. There are no false or misleading statements in the letter because late charges were possible because Perea had the right to reinstate. To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim to relief that is plausible on its face. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is not obligated to accept as true conclusory statements of law or unsupported conclusions of fact. *McLeod v. Arrow Marine Transp.*, Inc. 258 F.3d 608, 614 (7th Cir. 2001). A plaintiff "fails to state a claim and dismissal is appropriate as a matter of law when it is 'apparent from a reading of the letter

302975180v1 1015009

that not even a significant fraction of the population would be misled by it.'" *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (quoting *Taylor v. Cavalry Inv., LLC*, 365 F.3d 572, 574 (7th Cir. 2004)); *see also Owens v. LVNV Funding, LLC*, 832 F.3d 726, 737 (7th Cir. 2016) (affirming the 12(b)(6) dismissal of the plaintiff's FDCPA claims because the communications were not deceptive or misleading).

1.    **The facts in *Miller v. McCalla* support the conclusion that late charges are permissible in a post-acceleration dunning letter from a foreclosure law firm.**

The *Miller v. McCalla* case supports the conclusion that the safe harbor language about "late charges" was not false or misleading because the same circumstances were present in that case. In *Miller*, the borrower had the right to reinstate the mortgage loan because the mortgage stated that the borrower had the right to reinstate the loan by paying "all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred", by curing any other breached covenants, and by paying expenses incurred, such as attorneys' fees. (Ex. A at 4.)[1] The law firm in that case sent the borrower a dunning letter, but the letter only specified the principal amount due. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000). The Court held that the letter violated the FDCPA because it did not list the debt, but only a portion of it. *Id.* It was in this case that the Seventh Circuit crafted the safe harbor language about interest and late charges. *Id.* at 876. That is, the Seventh Circuit thought that appropriate language for the debt "in cases like this"—an FDCPA letter from foreclosure counsel regarding an accelerated mortgage—was the safe harbor language that "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount

---

[1] This Court can take judicial notice of public documents without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (taking judicial notice of public court documents); *see also Dasilva v. CitiMortgage, Inc.*, No. 12 C 13, 2012 U.S. Dist. LEXIS 150505, at *10 n.4 (N.D. Ill. Oct. 19, 2012) (taking judicial notice of a mortgage).

due on the day you pay may be greater." *Id.* at 876. There is no substantial difference between the conditions in *Miller* and the conditions present in this case when Codilis sent the letter. Under Perea's theory, the language crafted by the *Miller* Court for the situation presented in *Miller* would have itself violated the FDCPA in that case because the loan was accelerated. But surely the Seventh Circuit knew that when it offered the proposed language.

The circumstances between *Miller* and this case are the same. The borrowers' reinstatement rights are reflected in the mortgages in *Miller* and in this case—and the language is remarkably similar. Paragraph 18 in the *Miller* mortgage, which details the borrower's reinstatement rights, is substantively the same as paragraph 19 of the mortgage in this case, which articulates the same rights. (*See* Ex. A. at 4; Dkt. 1-1 at 18.) At several points the language used is verbatim, including the term that reinstatement requires paying the lender "all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred[.]" Again, faced with identical circumstances (an FDCPA letter from foreclosure counsel about an accelerated mortgage) and nearly-identical mortgage language about reinstatement, the Seventh Circuit offered the exact language that was used in this case. It would not have crafted general safe harbor language that would have constituted an FDCPA violation *in its own case*.

The substantively similar language between both mortgages aside, even if a borrower exercised the statutory right to reinstate recognized under the Illinois Mortgage Foreclosure Law, curing the default and placing the loan in a fully-reinstated spot going forward would involve paying all late charges for the period that no payments were made. In other words, Perea had the right to reinstate, and the amount of late charges necessary to reinstate would correspondingly increase each month Perea remained in default.

At bottom, *Miller* directly applies to these facts and should control.

2.    **The reinstatement rights present in this case allow for the assessment of late charges, even post-acceleration.**

The letter in this case is not false, deceptive, or misleading because late charges were possible—even post acceleration—because Perea had the right to reinstate the loan. Even after defaulting on a mortgage loan, a borrower has certain rights, including the right to reinstate. For any obligation secured by a mortgage that has become due through acceleration, a mortgagor may reinstate the mortgage by "curing all defaults then existing, other than payment of such portion of the principal which would not have been due had no acceleration occurred, *and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults . . . .*" 735 ILCS 5/15-1602 (emphasis added); *see also Federal Nat'l Mortg. Ass'n v. Bryant*, 62 Ill. App. 3d 25, 28 (5th Dist. 1978) (stating that "a defaulting mortgagor has the right to cure a default in payment by tendering the principal then due, excluding acceleration, plus costs, expenses, and reasonable attorney fees[.]").

Courts have recently held that referencing late charges for a defaulted and accelerated mortgage loan does not violate the FDCPA. In *Facey v. Carrington Mortgage Services, LLC*, the mortgage servicer declared the mortgage to be in default, accelerated the debt, and filed a foreclosure. No. 18 cv 61468, 2018 U.S. Dist. LEXIS 209619, at *1-2 (S.D. Fla. Dec. 11, 2018). It then sent the borrower's counsel monthly letters reporting that it was entitled to recover late fees. *Id.* at *2.

The borrower sued under the FDCPA, and claimed that the statements about late fees falsely represented the character of the debt under section 1692e and sought to collect fees that were not expressly authorized by agreement or statute under section 1692f. *Id.* The borrower argued that the servicer was not entitled to recover late fees after it accelerated the loan. *Id.* at *3.

The servicer moved to dismiss, and argued that the statement was not false because the mortgage entitled the servicer to assess post-acceleration late fees. *Id.* at *4. Specifically, Defendant argued that at the time the statements were sent, "Plaintiff had a right to reinstate the loan and thus the late fees were warranted." *Id.* at *6.

The court, in considering the argument, found it significant that "Plaintiff bases the entire claim on an allegation that Defendant was not entitled to assess post-acceleration fees, an argument that the Court rejects below." *Id.* at *5.

The court held that late charges could, in fact, but assessed after acceleration because of the language in the mortgage about reinstatement. The court reasoned that the mortgage in its case instructed that to reinstate, the borrower needed to pay the lender "all sums which then would be due under [the Mortgage] and the Note as if no acceleration occurred." *Id.* at *8. The court explained that prior cases interpreted this language as "giving a noteholder the legal right to treat the note as if it had not been accelerated for purposes of reinstatement." *Id.* at *8-9 (internal quotes omitted) (citing *Patel v. Seterus, Inc.*, No. 6:14 cv 1585, 2015 U.S. Dist. LEXIS 190095, at *11-12 (M. Dist. Fla. June 19, 2015)). The court concluded that "the terms of the Mortgage authorized the collection of post-acceleration late fees for overdue payments, including after acceleration." *Id.* at *9. Thus, the complaint failed to state a cause of action and was dismissed with prejudice. *Id.*

The same is true here. Perea's note specifies that a late charge will be incurred if he does not make a payment within 15 days of each due date. (Dkt. No. 1-1 at 32.) And Perea's mortgage gives him the right to reinstate after acceleration by paying "all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred[.]" *Id.* at 18. The mortgage language is the same as the language in *Facey*. Because of the applicable reinstatement

7

rights—both contractually under the mortgage and statutorily under the IMFL—the lender had the right to late charges, even post-acceleration. Thus, the letter was not false or misleading.

### 3. The cases Perea cites in his complaint are not applicable.

The cases Perea cites in the complaint are not applicable and demonstrate that he has failed to state a plausible claim. For example, he relies on *Rizzo v. Pierce and Associates* to argue that lenders cannot legally impose late charges after acceleration if the plaintiff does not reinstate the loan. (Dkt. No. 1 ¶ 31.) But in *Rizzo* the court held, uncontroversially, that the lender was permitted to charge post-acceleration late charges when the borrowers reinstated their mortgage loan. 351 F.3d 791, 794 (7th Cir. 2003). Further, Perea overstates the Court's holding: it did not hold that lenders "cannot legally impose late charges" after acceleration; it stated in dicta that it "may be the case" that there is an absence of an obligation to make monthly payments post-acceleration. *Id.* It did not discuss the proper language of dunning letters when a borrower has the right to reinstate, and did not discuss whether such language was misleading. *Id.*; *see also Facey*, 2018 U.S. Dist. LEXIS 209619 at *7 (noting that a Florida state appellate case on a similar issue was "of limited value in this case").

Similarly, the *Rodriguez* case is inapplicable. In *Rodriguez*, the plaintiff claimed that two documents submitted in a mortgage foreclosure case regarding amounts due were inconsistent. *Rodriguez v. Codilis & Assocs., P.C.*, No. 17 cv 3656, 2018 U.S. Dist. LEXIS 54898, at *3-4 (N.D. Ill. Mar. 30, 2018). The case did not deal with the *Miller* safe harbor language at all.

The *Boucher* case is also distinguishable. Perea cites *Boucher* to argue that Codilis could not rely on the *Miller* safe harbor language. (Dkt. No. 1 ¶ 36.) But *Boucher* did not deal with mortgage debt—it dealt with medical debt on which interest was accruing. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 365 (7th Cir. 2018). The letter in that case contained the *Miller* safe harbor language, *id.*, but the defendant admitted that it could not impose "late charges and other

302975180v1 1015009

charges" for that debt under Wisconsin law, *id.* at 367. The Seventh Circuit held that the statement about late charges was misleading because it implied a possible outcome "that cannot legally come to pass." *Id.* That's not the case here, where a mortgage debtor would be liable for late charges to reinstate the loan.

And because the letter accurately referenced late charges, for the same reasons stated above Codilis was not trying to collect amounts unauthorized by agreement or statute, and so did not violate section 1692f.

The letter in this case accurately described a situation where late charges were still possible, depending on how Perea chose to act. Thus, the letter did not violate the FDCPA, and the complaint should be dismissed with prejudice.

WHEREFORE, Defendant, Codilis & Associates, P.C., prays that this Honorable Court grant its Motion to Dismiss Plaintiff's Complaint and/or enter any other relief to the Defendant that is equitable and just.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

/s/ Louis J. Manetti, Jr.
Louis J. Manetti, Jr.

David M. Schultz
Louis J. Manetti, Jr.
Hinshaw & Culbertson LLP
151 North Franklin St., Suite 2500
Chicago, IL 60601-1081
Telephone: 312-704-3000
Facsimile: 312-704-3001
dschultz@hinshawlaw.com
lmanetti@hinshawlaw.com

302975180v1 1015009

## **CERTIFICATE OF SERVICE**

     I certify that on December 28, 2018, that I caused to be filed a copy of Defendant's Memorandum in Support of its Motion to Dismiss which will be sent to all Counsel of Record via the Court's electronic filing system.

                          HINSHAW & CULBERTSON LLP

By:   s/ Louis J. Manetti, Jr.
        Louis J. Manetti, Jr.

10

302975180v1 1015009