IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO PEREA, on behalf of plaintiff and a class, | ) ) ) Case No.: 1:18 cv 7364 |
| Plaintiff, | ) ) Judge: Hon. Edmond E. Chang ) |
| v. | ) ) ) |
| CODILIS & ASSOCIATES, P.C.; NATIONSTAR MORTGAGE, LLC, | ) ) ) |
| Defendants. | ) ) |

**MOTION FOR RELIEF UNDER FED. R. CIV. P. 11**

Defendant, Codilis & Associates, P.C., through its attorneys, David M. Schultz and Louis J. Manetti, Jr. of Hinshaw & Culbertson LLP, hereby moves this Court for Relief Under Fed. R. Civ. P. 11 in the form of the attorneys' fees and costs incurred in defending against this lawsuit to be paid by Plaintiff's Counsel of record. In support thereof, Codilis states as follows:

**INTRODUCTION**

Plaintiff Mario Perea's lawsuit is based on a single premise—that servicers cannot "legally impose" late charges after a mortgage loan has been accelerated (that is, after the servicer has declared all the amounts under the loan due). But this premise is not only incorrect, it ignores the seminal case that created the language used in the letter. It also neglects settled law about a borrower's rights to reinstate a loan that are both present in the mortgage document here and codified under Illinois law.

Because making this claim requires ignoring settled law, Perea's position is so lacking in merit that it justifies relief to Codilis for having to defend. In fact, despite the fact that the complaint has already been dismissed for Perea's failure to plead any injury sufficient to

establish standing, Perea seeks to amend the pleading to further prolong the effort and expense required in this case for both Codilis and its client, Nationstar Mortgage.

Pursuant to Rule 11(c)(2), this motion was served on Perea's counsel on February 4, 2019. Counsel did not withdraw the challenged claim within 21 days. Indeed, Codilis's counsel recently attempted to engage Perea's counsel about resolving this case in a manner acceptable to all parties. (Dkt. No. 49 ¶ 1.) Instead, Perea filed the motion to alter judgment. (Dkt. No. 47.)

## LEGAL STANDARD

An attorney filing a lawsuit on behalf of a party has important obligations under Federal Rule of Civil Procedure 11. Among those obligations is to conduct an investigation prior to filing the lawsuit to determine that the claims and legal contentions are supported by existing law, and not to bring a claim for an improper purpose. Fed. R. Civ. P. 11 (b)(1) and (b)(2). Rule 11(c) allows the court to impose sanctions in the form of attorneys' fees when a lawsuit is filed contrary to those obligations. *Mars Steep Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir. 1989). The central purpose of Rule 11 is to deter baseless filings in district court. *Brandt v. Schal Assoc., Inc.*, 960 F.2d 640, 650 (7th Cir. 1992).

## ARGUMENT

1. **Perea violated Rule 11 when he filed a complaint contrary to the seminal Seventh Circuit case about the language at issue and Illinois law and ignoring the right to loan reinstatement.**

Perea's lawsuit began when Codilis, a law firm that represents the mortgage banking industry, sent Perea a letter pursuant to the FDCPA. The letter stated the amount due, and further advised, "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." (Dkt. No. 1-1 at 49.)

Perea sued Codilis, and argued that the statement violated the FDCPA because servicers cannot "legally impose" late charges after a mortgage loan has been accelerated. (Dkt. No. 1 ¶ 31.)

Perea's position is untenable and cannot be asserted without ignoring the case that caused the Seventh Circuit to create the at-issue safe harbor language in the first place, as well as settled Illinois law about reinstatement. The sentence Perea singles out as a violation of the FDCPA is safe harbor language that was crafted by the Seventh Circuit in *Miller v. McCalla*. In that case, a debt collector law firm sent a dunning letter to a borrower for accelerated mortgage loan debt. The letter in that case did not state the full amount due—it merely stated the principal and invited the borrower to contact the law firm to learn the remaining amounts. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC*, 214 F.3d 872, 875 (7th Cir. 2000). In its analysis, the Seventh Circuit stated that communications to borrowers about accelerated mortgage debt that included language about interest *and late charges* would accurately describe the nature of the debt, and it created the safe harbor language at issue here. *Id.* at 876. Indeed, the Court stated that the language about interest and late charges would satisfy the debt collector's duty "in cases like this[.]" *Id.* There is no substantial difference between the conditions in *Miller* and the conditions present in this case when Codilis sent the letter. Under Perea's theory, the language crafted by the *Miller* Court for the situation presented in *Miller*—an accelerated mortgage debt—would have *itself* violated the FDCPA. Such a proposition crumbles under even the slightest scrutiny.

Even putting the *Miller* case aside, the letter is facially correct and accurately describes the state of the law in Illinois based on the borrower's rights at the time the letter is sent. Even after defaulting on a mortgage loan, a borrower has certain rights, including the right to reinstate. For any obligation secured by a mortgage that has become due through acceleration, a mortgagor

3

may reinstate the mortgage by "curing all defaults then existing, other than payment of such portion of the principal which would not have been due had no acceleration occurred, *and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults . . . .*" 735 ILCS 5/15-1602 (emphasis added); *see also Federal Nat'l Mortg. Ass'n v. Bryant*, 62 Ill. App. 3d 25, 28 (5th Dist. 1978) (stating that "a defaulting mortgagor has the right to cure a default in payment by tendering the principal then due, excluding acceleration, plus costs, expenses, and reasonable attorney fees[.]").

In addition to being codified in Illinois law, the right to reinstate is also reflected as a term in the overwhelming majority of mortgages, including the mortgage in this case. (Dkt. No. 1-1 at 18.)

What's more, recent case law agrees that language about late charges is accurate because the borrower has the right to reinstate. In *Facey v. Carrington Mortgage Services, LLC*, the mortgage servicer declared the mortgage to be in default, accelerated the debt, and filed a foreclosure. No. 18 cv 61468, 2018 U.S. Dist. LEXIS 209619, at *1-2 (S.D. Fla. Dec. 11, 2018). It then sent the borrower's counsel monthly letters reporting that it was entitled to recover late fees. *Id.* at *2.

The borrower sued under the FDCPA, and claimed that the statements about late fees falsely represented the character of the debt under section 1692e and sought to collect fees that were not expressly authorized by agreement or statute under section 1692f. *Id.* The borrower's claim was premised on the same theory as Perea's—that the servicer was not entitled to recover late fees after it accelerated the loan. *Id.* at *3.

The servicer moved to dismiss, and argued that the statement was not false because the mortgage entitled the servicer to assess post-acceleration late fees. *Id.* at *4. Specifically,

4

Defendant argued that at the time the statements were sent, "Plaintiff had a right to reinstate the loan and thus the late fees were warranted." *Id.* at *6.

The court, in considering the argument, found it significant that "Plaintiff bases the entire claim on an allegation that Defendant was not entitled to assess post-acceleration fees, an argument that the Court rejects below." *Id.* at *5.

The court held that late charges could, in fact, but assessed after acceleration because of the language in the mortgage about reinstatement. The court reasoned that the mortgage in its case instructed that to reinstate, the borrower needed to pay the lender "all sums which then would be due under [the Mortgage] and the Note as if no acceleration occurred." *Id.* at *8. The court explained that prior cases interpreted this language as "giving a noteholder the legal right to treat the note as if it had not been accelerated for purposes of reinstatement." *Id.* at *8-9 (internal quotes omitted) (citing *Patel v. Seterus, Inc.*, No. 6:14 cv 1585, 2015 U.S. Dist. LEXIS 190095, at *11-12 (M. Dist. Fla. June 19, 2015)). The court concluded that "the terms of the Mortgage authorized the collection of post-acceleration late fees for overdue payments, including after acceleration." *Id.* at *9. Thus, the complaint failed to state a cause of action and was dismissed with prejudice. *Id.*

Indeed, since this case was filed more decisions have held that letters referencing late charges with accelerated mortgage debt are accurate because of reinstatement, most recently the Second Circuit. In *Avila v. Reliant Capital Solutions, LLC*, the plaintiff claimed the defendant violated the FDCPA because it sent her a dunning letter on accelerated mortgage debt to reference "late charges and other charges", and according to the plaintiff, those charges were not possible. 771 Fed. App'x 46, 47 (2d Cir. 2019). The court noted that it had adopted safe harbor

5

language for debt that varies from day to day, and because late charges could be imposed on the debt if it were reinstated, the letter was not false when it used the safe harbor language. *Id.*

The same holds true here. Perea's note specifies that a late charge will be incurred if he does not make a payment within 15 days of each due date. (Dkt. No. 1-1 at 32.) And Perea's mortgage gives him the right to reinstate after acceleration by paying "all sums which then would be due under this Security Instrument and the Note *as if no acceleration had occurred*[.]" *Id.* at 18 (emphasis added). The mortgage language is the same as the language in *Facey*. Because of the applicable reinstatement rights—both contractually under the mortgage and statutorily under the IMFL—the lender had the right to late charges, even post-acceleration. Thus, the letter was not false or misleading.

## 2. The cases Perea cites do not provide a sound basis for his claim.

The meritless nature of the complaint is not salvaged by the cases that Perea cites because they do not provide a substantive grounding for his claim. For example, he relies on *Rizzo v. Pierce and Associates* to argue that lenders cannot "legally impose" late charges after acceleration if the plaintiff does not reinstate the loan. (Dkt. No. 1 ¶ 31.) But in *Rizzo* the court merely held that the lender was *permitted* to charge post-acceleration late charges when the borrowers reinstated their mortgage loan. 351 F.3d 791, 794 (7th Cir. 2003). Further, Perea overstates the Court's holding: it did not hold that lenders "cannot legally impose late charges" after acceleration; it stated in dicta that it "may be the case" that there is an absence of an obligation to make monthly payments post-acceleration. *Id.* It did not discuss the proper language of dunning letters when a borrower has the right to reinstate, and did not discuss whether such language was misleading. *Id.*; *see also Facey*, 2018 U.S. Dist. LEXIS 209619 at *7 (noting that a Florida state appellate case on a similar issue was "of limited value in this case").

Similarly, the *Rodriguez* case is inapplicable. In *Rodriguez*, the plaintiff claimed that two documents submitted in a mortgage foreclosure case regarding amounts due were inconsistent. *Rodriguez v. Codilis & Assocs., P.C.*, No. 17 cv 3656, 2018 U.S. Dist. LEXIS 54898, at *3-4 (N.D. Ill. Mar. 30, 2018). The case did not deal with the *Miller* safe harbor language at all.

The *Boucher* case is also distinguishable. Perea cites *Boucher* to argue that Codilis could not rely on the *Miller* safe harbor language. (Dkt. No. 1 ¶ 36.) But *Boucher* did not deal with mortgage debt—it dealt with medical debt on which interest was accruing. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 365 (7th Cir. 2018). Moreover, the defendant in that case admitted that it could not impose "late charges and other charges" for that debt under Wisconsin law. *Id.* at 367. The Seventh Circuit held that the statement about late charges was misleading because it implied a possible outcome "that cannot legally come to pass." *Id.* That's not the case here, where a mortgage debtor would be liable for late charges to reinstate the loan.

In short, Perea's claim requires servicers to be unable to "legally impose" late charges after acceleration. But his cited cases do not support this position, and it remains contrary to settled law.

## CONCLUSION

The letter sent to Perea was not false, and no reasonable person could possibly be misled by it. But Perea is now seeking to prolong the effort and expense required by this case by filing an amended pleading setting forth the same theory with five additional paragraphs. The meritless nature of the claim, its being obviously contrary to settled law, and Perea's insistence on proceeding on this theory, justifies relief under Rule 11.

Respectfully submitted,

1015009\303091262.v1

*By: /s/ Louis J. Manetti, Jr.*

David M. Schultz
Louis J. Manetti, Jr.
Hinshaw & Culbertson LLP
151 N. Franklin Street, Suite 2500
Chicago, IL  60606
Tel:    312/704-3000
Fax:    312/704-3001
dschultz@hinshawlaw.com
lmanetti@hinshawlaw.com

## CERTIFICATE OF SERVICE

      I hereby certify that on November 13, 2019, I electronically filed Defendant's Motion for Relief under Rule 11 with the Clerk of the Court using the CM/ECF system, reflecting service to be served upon all parties of record.

*/s/ Louis J. Manetti, Jr.*