UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARIO PEREA, ) | |
| Individually and On Behalf of a Class, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:18-cv-07364 |
| ) | |
| v. ) | Honorable Edmond E. Chang |
| ) | |
| CODILIS & ASSOCIATES, P.C., and ) | |
| NATIONSTAR MORTGAGE, LLC, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM SUPPORTING THEIR MOTION TO DISMISS

Codilis—as Nationstar's retained counsel for its mortgage foreclosure action—sent Mr. Perea a default letter after loan acceleration. The letter states the amount due and warns, because of late charges or other fees, the amount due on the day Mr. Perea pays may be greater. Mr. Perea's entire complaint bases solely on this one sentence. He complains it violated FDCPA because lenders "cannot legally impose" late charges after loan acceleration. Mr. Perea is wrong. Not only does the letter track the precise "safe harbor" language the Seventh Circuit approved in *Miller* as FDCPA compliant, it accurately apprised Mr. Perea of the outstanding balance and the possibility of fluctuations due to late fees and other charges. Mortgagors have reinstatement rights even after acceleration flowing from contract (the mortgage) and statute, the Illinois Mortgage Foreclosure Law (**IMFL**). To reinstate, Mr. Perea would have been required to pay the amount to bring his loan current, *plus* late charges. The claims against Nationstar should separately be dismissed for an additional reason: Mr. Perea fails pleading compliance with the mortgage's notice and opportunity to cure clause. This clause is condition precedent to Mr. Perea initiating this action. A dismissal with prejudice under 12(b)(6) is warranted.

I.      **STATEMENT OF ALLEGATIONS**

Mr. Perea obtained a $600,000 refinance loan from America's Wholesale Lender on June 1, 2012. (Doc. 67-1 pp. 32-33). The loan is secured by a mortgage recorded July 27, 2006 against the property located at 1813 Auburn Avenue, Naperville, Illinois 60565.[1] (*Id*. p. 7). Nationstar is and has been the loan servicer during the relevant time period. (Doc. 67 ¶ ¶ 11, 21).

The loan documents contain several relevant provisions. Note paragraph 6(A) allows for late fees if a timely monthly payment has not been made. (Doc. 67-1 p. 32 ¶ 6(A)). The mortgage explains Mr. Perea's obligation to pay late fees continues if he reinstates the loan following a default acceleration. Paragraph 19—the reinstatement provision—requires payment of "all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred." (*Id*. p. 18 ¶ 19). Paragraph 20 requires pre-suit notice and opportunity to cure:

> Neither Borrower nor Lender may commence … any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party … a reasonable period … to take corrective action.

(*Id*. p. 19 ¶ 20). Paragraph 15 requires all notices "must be in writing." (*Id*. p. 17 ¶ 15).

Mr. Perea failed to make monthly payments and Nationstar retained Codilis to commence foreclosure proceedings in July 2017. (*See* Doc. 67 ¶¶ 6, 19-20, 23). Codilis sent a letter to Mr. Perea on November 6, 2017, advising him of the accelerated loan balance of $959,995.30. (Doc. 67-1 p. 49-50). The letter explained, "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." (Doc. 67-1 p. 49). Mr. Perea did not pay the accelerated amount or reinstate the loan. (Doc. 67 ¶¶ 29-30).

---

[1] Mr. Perea also executed a loan modification agreement on September 23, 2016. (Doc. 67-1 p. 34).

Mr. Perea filed this action against Codilis and Nationstar claiming the November 6, 2017 letter violates FDCPA because it references the possibility of accumulating post-acceleration late charges. (*Id.* ¶ 33). He complains the reference is false, deceptive and/or misleading, violating FDCPA § § 1692e, e(2)(A), e(5) and e(10) because Nationstar cannot assess post-acceleration late charges. (*Id.* ¶¶ 48-50). He also claims the letter violates FDCPA § 1692f because it is an unconscionable attempt to collect amounts unauthorized by agreement or law. (*Id.* ¶¶54-55). Mr. Perea does not allege he sent any pre-suit written notice to Nationstar. (*See generally*, Doc. 67).

II.     STANDARD

Rule 12(b)(6) allows for dismissal of a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is not obligated to accept as true conclusory statements of law or unsupported conclusions of fact. *McLeod v. Arrow Marine Transp., Inc*. 258 F.3d 608, 614 (7th Cir. 2001).

III.    ARGUMENT

   A.   Codilis' November 6, 2018 Letter is Accurate

Mr. Perea claims the letter is false because it purportedly threatens to impose post-acceleration late fees without reinstatement. (Doc. No. 67 ¶ 47). The letter simply advises of the possibility of "interest, late charges, and other charges that *may* vary from day to day." (Doc. 67-1 p. 49). Late charges may vary, if for example, if the loan is reinstated. Mr. Perea at all relevant times had the right to reinstate the loan both contractually and pursuant to IMFL. The mortgage allows reinstatement by payment of "all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred." (Doc 67-1 p. 18 ¶ 19).

3

Similarly, IMFL grants a borrower the right to reinstate the mortgage by "curing all defaults then existing, other than payment of such portion of the principal which would have been due had no acceleration occurred, and by paying all costs and expenses required by the mortgage to be paid in the event of such defaults." 735 ILCS 5/15-1602. Courts routinely recognize such reinstatement rights. *See Federal Nat'l Mortg. Ass'n v. Bryant*, 62 Ill. App. 3d 25, 28 (5th Dist. 1978) ("a defaulting mortgagor has the right to cure a default in payment by tendering the principal then due, excluding acceleration, plus costs, expenses, and reasonable attorney fees[.]").

Courts have also determined a reference to late charges on an accelerated mortgage loan does not violate FDCPA when the right to reinstate remains available. *See e.g. Facey v. Carrington Mortgage Services*, LLC, 18-CV-61468-KMM, 2018 WL 7822710, at *4 (S.D. Fla. Dec. 11, 2018) ("[T]he [c]ourt finds that the terms of the [m]ortgage authorized the collection of post-acceleration late fees for overdue payments, including after acceleration."). While Mr. Perea relies on *Rizzo v. Pierce & Assoc.*, 351 F.3d 791, 793-94 (7th Cir. 2003) to argue lenders cannot impose post-acceleration late charges if the plaintiff does not reinstate the loan (Doc. 67 ¶ 31.), he does not and could not allege the letter actually demanded or imposed post-acceleration late charges. The letter simply states what charges "may" accrue. (Doc. 67-1 p. 49). And as *Rizzo* recognized, post-acceleration late charges are permitted after reinstatement. 351 F.3d at 794.

  B. *Miller* **Controls and Requires Dismissal**

The court need not look further than *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), which is dispositive here. In *Miller*, to help debt collectors avoid violating FDCPA, the Seventh Circuit drafted an FDCPA compliant letter with "safe harbor" language. *Id*. The "safe harbor" language provides:

4

> As of the date of this letter, you owe $____ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection.

*Id.* (noting a debt collector using the safe harbor language will not violate FDCPA as long as the information provided is accurate and does not confuse). "A debt collector who uses safe harbor-equivalent language does not misrepresent the amount of the debt owed by indicating that [other charges] may be applied, whether or not [other charges are] in fact applied." *Wilder v. J.C. Christensen & Assoc., Inc.*, 2016 WL 7104283, at * 4 (N.D. Ill. Dec. 6, 2016) (dismissing FDCPA claim based on letter using "safe harbor" language where potential to incur additional interest charges was possible). The statement is a truism explaining charges may accrue and, if so, the balance will be adjusted. *Id.* Codilis' letter tracks the "safe harbor" language. It contains an accurate truism about the prospect of incurring post-acceleration late charges. (Doc. 67-1 p. 49).

The note indisputably provides for late fees when a monthly payment has not been made within fifteen days of its due date. (*Id*. p. 32 ¶ 6(A)). The mortgage's reinstatement provision requires payment of "all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred . . . ." (*Id*. p. 18 ¶ 19). These provisions have a retroactive effect, meaning they "unambiguously require plaintiffs to pay the late fees" upon reinstatement. *Rizzo v. Pierce & Assoc.*, 351 F.3d 791, 793-94 (7th Cir. 2003). Use of the "safe harbor" language containing a truism about post-acceleration late charges and other applicable fees cannot be classified an FDCPA violation because the "terms of the note and mortgage explicitly require payment of all sums which would then be due had no acceleration occurred" upon reinstatement. *Id.* ("We cannot find any false or misleading representations nor can we deem the collection of late fees unfair or unconscionable."); *see also Wilder*, 2016 WL 7104283, at *6-7.

5

Mr. Perea complains his private decision not to reinstate makes the "safe harbor" language false. (Doc. 67 ¶¶ 44-45). He is wrong. His option to reinstate and the obligation to pay post-acceleration late fees remains viable to this day. The reinstatement right survives until the earliest of five days before a foreclose sale, entry of foreclosure judgment, or any other time prescribed by law. (Doc. 67-1 p. 18 ¶ 19). Mr. Perea cannot otherwise purport to be confused by the "safe harbor" language. *See Taylor v. Cavalry Investment, LLC*, 365 F.3d 572, 575 (7th Cir. 2004) (finding similar statement cannot be confusing because "[i]t is a clear statement of a truism."). *Taylor* even noted, after affirming dismissal of two FDCPA claims, "plaintiffs have an alternative claim that is downright frivolous—that the ["safe harbor" language] from the dunning letter is false, and so violated 15 U.S.C. § 1692e, because two of the creditors did not add interest. The letter didn't say they would, only that they might." *Id*. The same is true in this case.

Mr. Perea cites *Boucher* to argue Codilis cannot rely on safe harbor language. (Doc. 67 ¶ 36.) But *Boucher* did not deal with mortgage debt—it dealt with medical debt on which interest was accruing. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 365 (7th Cir. 2018). The letter in *Boucher* contained the *Miller* safe harbor language, but the defendant admitted it could not impose "late charges and other charges" for that debt under Wisconsin law. *Id*. at 367. The Seventh Circuit held the statement about late charges was misleading because it implied a possible outcome "that cannot legally come to pass." *Id*. That's not the case here, where a mortgage debtor would be liable for late charges to reinstate the loan. The letter in this case accurately stated late charges were still possible, depending on how Mr. Perea chose to act.

Mr. Perea's reliance on *Rodriguez*, where plaintiff claimed two documents showing amounts due were inconsistent, is similarly misplaced. *Rodriguez v. Codilis & Associates, P.C*. 2018 WL 1565596 (N.D. Ill. Mar. 30, 2018) did not deal with safe harbor language at all.

6

### C. Mr. Perea Failed to Issue Pre-suit Notice

This court should dismiss the claims against Nationstar because Mr. Perea fails to allege he provided pre-suit notice and an opportunity to cure. The mortgage requires such notice, (Doc. 67-1 p. 18 ¶ 20), and the notice and cure clause serves an important purpose. Requiring parties to communicate pre-suit can prevent needless litigation. It appears Mr. Perea wanted to engage in needless litigation since his claims are the exact type the Seventh Circuit discourages:

> [The FDCPA] can be abused just as easily by attorneys who use debtors to allege and test the most minute violations of a concededly intricate statutory scheme. . . . The law would be best served by challenging clear violations rather than scanning for technical missteps that bring minimal relief to the individual debtor but a possible windfall for the attorney.

*Bailey v. Security Nat'l Serv. Corp.*, 154 F.3d 384, 388 (7th Cir. 1998) (affirming dismissal of FDCPA class claims because dunning letter "does not 'demand' any payment whatsoever, but merely informs the Baileys about 'the current status' of their account."). But to the extent Mr. Perea wanted clarification, he should have asked Nationstar to clarify the amount due.

The notice and cure provision applies to bar Mr. Perea's claim. Mr. Perea is the defined "Borrower" in the mortgage. (Doc. 67-1 p. 8). Nationstar is not the defined "Lender" in the mortgage (*see id.*), but there is no dispute Nationstar is the servicer of the loan. (*See* Doc. 67 ¶ 21). The mortgage states "[t]he covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." (Doc. 67-1 p. 17 ¶ 13). As the servicer, Nationstar is an "assignee" of the lender under the mortgage and is entitled to the benefit of the notice and cure provision. *See Giotta v. Ocwen Loan Servicing, LLC*, 706 F. App'x 421 (9th Cir. 2017) (holding Ocwen was not the defined "Lender," but as the assigned servicer it could benefit from the notice and cure provision).

This lawsuit also arises from Nationstar's actions pursuant to the mortgage. "A claim 'relates to' a contract when 'the dispute occurs as a fairly direct result of the performance of contractual duties.'" *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340-41 (11th Cir. 2012). Here, there can be no real dispute this matter arises from the mortgage. Mr. Perea attached the mortgage to his complaint. (Doc. 67-1 pp. 7-21). And Nationstar's right to post-acceleration late fees, and Mr. Perea's reinstatement rights are found in the mortgage. (*Id*. p. 32 ¶ 6, p. 18 ¶ 19).

Mr. Perea does not plead he notified Nationstar of the allegedly confusing or misleading statement, and he certainly does not plead he did so in writing as required. (Doc. 67-1 p. 17 ¶ 15). Mr. Perea fails to plead he afforded Nationstar a reasonable opportunity to take corrective action. Courts throughout the country, including this district, have dismissed FDCPA and other claims when the borrower fails to affirmatively plead compliance with the notice and cure provision. *See Michael v. CitiMortgage, Inc.*, 2017 WL 1208487, at *4 (N.D. Ill. Apr. 3, 2017) ("[T]he Court dismisses Plaintiff's claims because she failed to allege compliance with the notice provision in her contract."); *see also Giotta*, 706 F. App'x at 423 ("Because the Giottas failed to provide pre-suit notice to Ocwen in accordance with the Deed of Trust, the district court properly dismissed the case."); *Johnson v. Countrywide Home Loans, Inc.*, No 1:10CV1018, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) (dismissing statutory claims (including FDCPA claim) for failure to plead compliance with notice and cure provision). Most recently, this very court extensively discussed a similar notice and cure provisions and held "plaintiff was required to comply with the [m]ortgage's notice and cure provision prior to filing [his] suit." *Rodriguez v. Rushmore Loan Mgmt. Services LLC*, 2019 WL 423375, at *6 (N.D. Ill. Feb. 4, 2019).

Because the notice and cure provision applies and Mr. Perea does not plead compliance, this court should dismiss the complaint. That dismissal should be with prejudice.

8

**CONCLUSION**

Instead of allowing this case to remain dismissed following defendants' successful 12(b)(1) motion for lack of standing, Mr. Perea moved to reconsider and sought to file an amended complaint even though this case is clearly within *Miller's* safe harbor language. While the court determined Mr. Perea narrowly stated allegations for standing, Mr. Perea's claims are still meritless. Nationstar respectfully requests this court dismiss the complaint with prejudice.

DATED: December 22, 2020

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| Akerman LLP | Hinshaw & Culbertson, LLP |
| */s/ Rebekah Childers* | */s/ Louis J. Manetti, Jr.* |
| One of the Attorneys for Nationstar Mortgage LLC | One of the Attorneys for Codilis & Associates |
| | David M. Schultz |
| Mark S. Bernstein (ARDC #6198568) | Louis J. Manetti, Jr. |
| Rebekah Childers (ARDC #6305616) | 151 North Franklin St., Suite 2500 |
| 71 South Wacker Drive, 46th Floor | Chicago, IL 60606 |
| Chicago, IL 60606 | Telephone: 312-704-3000 |
| (312) 634-5700 Telephone | dschultz@hinshawlaw.com |
| mark.bernstein@akerman.com | lmanetti@hinishawlaw.com |
| rebekah.childers@akerman.com | |

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of **Defendants' Memorandum Supporting their Motion to Dismiss** was served upon all counsel of record via the court's CM/ECF system on December 22, 2020.

By: /s/ *Rebekah A Carpenter*
Mark S. Bernstein (ARDC #6198568)
Rebekah Carpenter (ARDC #6305616)
71 South Wacker Drive, 46th Floor
Chicago, IL 60606
(312) 634-5700 Telephone
(312) 424-1931 Facsimile
mark.bernstein@akerman.com
rebekah.carpenter@akerman.com

*Attorney for Nationstar Mortgage, LLC*